**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELISABETH BEST, JENNA BUCKLEW, RACHEL IRIAS, CASSANDRA STEPHAN, *on behalf of themselves and on behalf of others similarly situated*, <br><br>      Plaintiffs. <br><br>        v. <br><br> SECOND NATURE BRANDS, INC.; SECOND NATURE INSURANCE SERVICES, LLC; QBE SPECIALTY INSURANCE COMPANY; COLUMBIA PROPERTY MANAGEMENT, LLC; and SCOTT BLOOM <br><br>      Defendants. | Civ. No. 1:24-CV-01799-JMC |

**<u>FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND</u>**

Plaintiffs Elisabeth Best, Jenna Bucklew, Rachel Irias, and Cassandra Stephan ("Plaintiffs"), on behalf of themselves and all others similarly situated, hereby allege for their First Amended Class Action Complaint the following:

1.      This case involves the fraudulent and unlawful billing of mandatory fees to residential tenants for a "Resident Benefits Package," which provided no value or benefits to tenants, but instead benefitted landlords and property managers. Mandatory fees, such as these, are prohibited by District of Columbia law.

2.      The fraudulent scheme was set up by Defendants Second Nature Brands Inc. and Second Nature Insurance Services, LLC (collectively "Second Nature") to create "Ancillary Revenue Opportunities" for landlords and property managers to bilk residential tenants through a

mandatory monthly service fee. And the entire scheme is laid out on its own website. Second Nature defines "Ancillary Revenue" as "any additional source of income generated by a property that is not directly related to its primary function or purpose." By implementing these "Ancillary Revenue Opportunities," "property managers can increase their income and offset some of the costs with maintaining the property." In other words, it is a way for landlords and property managers to push their overhead costs onto the tenants, while also establishing an "Ancillary Revenue" stream apart from the monthly rent. This is against the law in the District of Columbia.

3.     The "Ancillary Revenue Opportunity" pitched by Second Nature is called the "Resident Benefits Package," by which the landlord or property manager charges a "mandatory" fee to tenants to extract more money from tenants. And the purported benefits to the residential tenants to justify these mandatory fees serve only to benefit the landlord and property manager. For instance, the fees cover (1) insurance (which provided coverage to the landlord and property manager); (2) HVAC filters (which is the responsibility of the landlord under D.C. law and were never actually provided to Plaintiffs); and (3) access to an online portal to pay rent and receive undefined "resident rewards." So, although the tenants are charged a monthly fee for these purported benefits, the direct beneficiaries were the landlord and property manager.

4.     Nevertheless, mandatory fees, such as the "Resident Benefits Package" are unlawful under D.C. Code § 42–3502.11a, as well as the D.C. Consumer Procedure Protections Act ("CPPA"), D.C. Code § 28-3901, *et seq.*

5.     QBE Specialty Insurance Company ("QBE") provided the insurance as part of this scheme under a "Master Policy" (policy number RML5880359), which was referred to as

KLAPROTH LAW PLLC
2300 WISCONSIN AVE NW SUITE 100A | WASHINGTON DC 20007
www.klaprothlaw.com

"Property Manager and Landlord Protection Policy" (hereinafter "Property Manager and Landlord Protection Policy" or "Policy").

6.      In this particular case, Plaintiffs leased the property located at 1934 1st Street NW, Washington, DC 20001 (the "Property") for the term of July 1, 2023, through June 30, 2024. Columbia Property Management, LLC ("Columbia Property Management") and Scott Bloom ("Bloom") served as the property manager and entered into the lease on behalf of the landlord, 1934 First St Land Trust (the "Landlord"). As part of the lease, Columbia Property Management wrote into the lease that "Tenant Acknowledges that attached documents form part of this Lease: Appendix A, Appendix B, and the CPM Resident Handbook," although these documents were not attached to the lease. Without any authorization or agreement by the Plaintiffs, Columbia Property Management and Scott Bloom automatically enrolled the Plaintiffs in the "Resident Benefit Package," offered by Second Nature, and billed them $45.95 per month. This class action is brought to enjoin Defendants from charging tenants in the District of Columbia these illegal monthly fees, as well as to recover compensatory and statutory damages incurred, punitive damages, and attorneys' fees and costs.

7.      Defendants' fraudulent scheme to charge District of Columbia tenants unlawful monthly fees came to light when Plaintiffs' rental house burned down on August 28, 2023. After the fire, Plaintiffs attempted to make an insurance claim for their damaged possessions. They then learned for the first time that the insurance for which they were charged for as part of the Resident Benefits Package, was not actually renter's insurance as had been represented to them, but instead a "Property Manager and Landlord Protection Policy," that included a mere $10,000 of coverage for the personal property of all four Plaintiffs even though their personal property damage

3

collectively exceeded $100,000. Because Defendants had represented to Plaintiffs that they had "Renter's Insurance" as part of the Resident Benefits Package, they did not obtain separate renter's insurance to cover their personal belongings. As a result of Defendants' misrepresentations, Plaintiffs were grossly underinsured and suffered significant damages.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this claim pursuant to 8 U.S.C. § 1332(d), as well as D.C. Code § 42-3502.18.

9.      This Court has personal jurisdiction over the Defendants pursuant to D.C. Code § 13-423(a)(1)-(4).

10.      Venue is proper in this Court as the acts and/or omissions alleged in this First Amended Complaint occurred in the District of Columbia.

## PARTIES AND RELEVANT PERSONS

11.      Plaintiff Elisabeth Best is an individual residing in the District of Columbia. Best is a consumer as defined by D.C. Code § 28-3091(a)(2). At all times relevant, Best was a tenant residing at the Property.

12.      Plaintiff Jenna Bucklew is an individual residing in the District of Columbia. Bucklew is a consumer as defined by D.C. Code § 28-3091(a)(2). At all times relevant, Bucklew was a tenant residing at the Property.

13.      Plaintiff Rachel Irias is an individual residing in the District of Columbia. Irias is a consumer as defined by D.C. Code § 28-3091(a)(2). At all times relevant, Irias was a tenant residing at the Property.

14.      Plaintiff Cassandra Stephan is an individual residing in the District of Columbia.

4

Stephan is a consumer as defined by D.C. Code § 28-3091(a)(2). At all times relevant, Stephan was a tenant residing at the Property.

15.    Defendant Second Nature Brands Inc. is a corporation organized in the state of Delaware with its principal place of business in North Carolina. Second Nature Brands Inc. is a merchant as defined by D.C. Code § 28-3091(a)(3) as it supplied the "Resident Benefits Package" to Plaintiffs and members of the Class, which is a "consumer good." Second Nature Brands Inc. is a housing provider as defined by D.C. Code § 42–3501.03 as it: (1) acted as an agent of the Landlord and Columbia Property Management (who in turn is a housing provider); and (2) received a benefit (the mandatory fee charged for the Resident Benefits Package) for the use or occupancy of the rental unit on the Property.

16.    Defendant Second Nature Insurance Services, LLC is a limited liability company in the state of North Carolina with its principal place of business in North Carolina. Second Nature Insurance Services, LLC is a merchant as defined by D.C. Code § 28-3091(a)(3) as it supplied the "Resident Benefits Package" to Plaintiffs and members of the Class, which is a "consumer good." Second Nature Insurance Services, LLC is a housing provider as defined by D.C. Code § 42–3501.03 as it: (1) acted as an agent of the Landlord and Columbia Property Management (who in turn is a housing provider); and (2) received a benefit (the mandatory fee charged for the Resident Benefits Package) for the use or occupancy of the rental unit on the Property.

17.    Defendant QBE Specialty Insurance Company ("QBE") is believed to be a corporation organized in the state of North Dakota with its principal place of business in Wisconsin. QBE is a merchant as defined by D.C. Code § 28-3091(a)(3) as it supplied the "Resident Benefits Package" to Plaintiffs and members of the Class, which is a "consumer good."

5

In addition, QBE is on the "supply side" of the "trade practice" supplying consumer goods and services, which includes the "Resident Benefits Package" and the insurance provided as part of the Resident Benefits Package. QBE is a housing provider as defined by D.C. Code § 42–3501.03 as it: (1) acted as an agent of the Landlord and Columbia Property Management (who in turn is a housing provider); and (2) received a benefit (the mandatory fee charged for the Resident Benefits Package) for the use or occupancy of the rental unit on the Property.

18.    QBE provided the insurance policy to Second Nature as part of the "Resident Benefits Package." QBE was aware that Second Nature sold the Resident Benefits Package, as well as the insurance, to property managers and landlords as a way to obtain "ancillary revenue" through mandatory monthly fees billed to tenants. And although it was represented to the tenants that the Property Manager and Landlord Protection Policy was "Renter's Insurance," QBE knew that this was inaccurate. Nonetheless, QBE failed to disclose this material fact to the Class Members, as well as the terms of the insurance policy it issued on behalf of Second Nature to the Class Members.

19.    Defendant Columbia Property Management, LLC is a limited liability company organized in the District of Columbia with its principal place of business in District of Columbia. Defendant Columbia Property Management, LLC is a citizen of the District of Columbia. Defendant Columbia Property Management, LLC is a merchant as defined by D.C. Code § 28-3091(a)(3) as it supplied the "Resident Benefits Package" to Plaintiffs and members of the Class, which is a "consumer good," as well as other property management services associated with "personal, [or] household…purposes." Columbia Property Management is a housing provider as defined by § 42–3501.03 as it acted as an agent of the Landlord and received a benefit for the use

6

or occupancy of the rental unit on the Property.

20.     Defendant Scott Bloom is a citizen of the District of Columbia. Defendant Scott Bloom is a merchant as defined by D.C. Code § 28-3901(a)(3) as he supplied the "Resident Benefits Package" to Plaintiffs and members of the Class, which is a "consumer good," as well as other property management services associated with "personal, household…purposes." Defendant Bloom is liable for his own tortious and unlawful conduct, as well as participating in the tortious and unlawful conduct. Bloom is a housing provider as defined by § 42–3501.03 as he acted as an agent of the Landlord and received a benefit for the use or occupancy of the rental unit on the Property.

21.     At all times relevant herein, Defendants operated as part of a joint venture with one another for the common purpose of bilking District of Columbia residents out of money through Second Nature's "Resident Benefits Package," which was marketed as providing "Renter's Insurance" through the QBE Defendants. Each of the Defendants had an equal right to control the manner in which the joint venture operated, including without limitation, providing so-called "Renter's Insurance" as one of the purported benefits to tenants, billing a monthly mandatory fee to the tenants, and determining which properties were eligible to be included under the Master Policy. Second Nature described the joint venture on its webpage, https://www.secondnature.com/benefits/renters-insurance . And on that webpage, it referred to the QBE Defendants as its "preferred insurance partner-broker…". Each of the Defendants profited from the mandatory monthly fee charged for the "Resident Benefits Package."

22.     The Property is a "Housing Accommodation" as defined by D.C. § 42-3501.03. The Property is not exempt from rent control under D.C. Code § 42-3505.05, or any other provision of

KLAPROTH LAW PLLC
2300 WISCONSIN AVE NW SUITE 100A | WASHINGTON DC 20007
www.klaprothlaw.com

law. *First*, the Landlord never submitted a completed, signed[1] "Claim of Exemption," which is required to apply for an exemption. While the Landlord registered the Property as a "Housing Accommodation" as required by law, it never submitted a "Claim of Exemption" with the Department of Housing and Community Development which is necessary to be an exempt property. *Second*, the Property is not eligible for exemption under D.C. Code § 42–3502.05 as the Property is not owned by a "natural person" but instead a trust. *Third*, neither the Landlord nor Columbia Property Management ever represented to the Plaintiffs that the Property was exempt, which would be required under the law if it were exempt (but it is not). *Fourth,* the Department of Housing and Community Development confirmed to Plaintiffs that the Property is not exempt.

23.     At all times relevant, QBE and Second Nature were agents of the Landlord and/or Columbia Property Management. Specifically, Columbia Property Management: (1) selected Second Nature and QBE on behalf of the Landlord to provide insurance for the Property; (2) collected money from Plaintiffs, as well as members of the Class, through charging mandatory fees for the Resident Benefits Package, who then remitted the money charged from the fees to QBE and Second Nature; (3) had the power to terminate the relationship with QBE and Second Nature; and (4) had the power to negotiate and direct QBE and Second Nature to provide certain insurance services for the Property, albeit for the benefit of the Landlord and Columbia Property Management.

---

1     The "Claim of Exemption" application must be signed under oath or affirmation and contain the signature of each "natural" person having an interest, direct or indirect, in the housing accommodation.

8

FACTS COMMON TO ALL COUNTS

**The Setup: "Ancillary Revenue" through the "Resident Benefits Package"**

24.     This fraudulent scheme began, as frauds typically do, with the prospect of easy money. The easy money here is pitched by Second Nature as "Ancillary Revenue." Indeed, Second Nature maps out the entire scheme on its website. According to Second Nature:



25.     Second Nature then provides guidance to property managers and landlords on how to obtain additional money from tenants apart from the monthly rent:

9

# What is Ancillary Revenue?

First, let's get down to brass tacks.

Ancillary revenue is any additional source of income generated by a property that is not directly related to its primary function or purpose. In property management, property managers offer additional services to generate additional income for themselves and their client investors beyond the rent or lease payments they receive from residents.

Most of us are familiar with ancillary revenue streams like those used in the airline industry or hotel industry. Companies may charge for early check-in, late check-out, in-flight entertainment, wifi etc. But what many of these programs miss is the opportunity to generate value without nickel-and-diming people.

Examples of ancillary revenue in property management can include things like pet fees, renter's insurance programs, management fees, and more. These compound to boost your total revenue alongside adding value for residents and investors. In some ways, you can think of it like an upsell, but it's really about value generation and finding a way to diversify revenue streams.

By diversifying their revenue streams, property managers can increase their income and offset some of the costs associated with maintaining the property.

And while Second Nature made it clear, "Ancillary Revenue" is similar fees that consumers are used to in the airline industry and hotel industry, they provided examples of these types of fees that can be charged to tenants by property managers:

KLAPROTH LAW PLLC
2300 WISCONSIN AVE NW SUITE 100A | WASHINGTON DC 20007
www.klaprothlaw.com

# Ancillary revenue stream examples in property management

Let's look at some of the most common and successful ancillary revenue examples. Ancillary programs work well for both multifamily and single-family rentals. You can break ancillary charges down into two categories: fees vs. special programs.

## Ancillary Fees

First, there's the ancillary fees approach. Those can include the following.

### Resident-Focused

- Security Deposit Processing Fees
- Leasing or Lease Amendment Fees
- Paper Lease Setup Fees
- Lease Renewal Fees
- Renters Insurance
- Late Fees

### Investor-Focused

- Inspection and Maintenance Monthly Fees
- Marketing Fees (social media, etc.)
- Insurance Risk Mitigation Fees
- Vendor Screening Fees
- Rent Protection or Eviction Fees

Ultimately, according to Second Nature, "[a]ncillary revenue is a huge profit driver for property management companies." *Id.* Second Nature stated:

> [t]here is a lot of money to be made in ancillary income in the property management industry and real estate industry. But many property managers don't even consider the wealth of opportunities to increase profit, grow your business, and increase the satisfaction of your residents that ancillary income opportunities provide

11

And Second Nature capitalized on these added fees charged to tenants by property managers by creating their "Resident Benefits Package," which Second Nature summarizes as follows:




26. Since the lawsuit was filed, Second Nature altered the above webpage in its entirety and deleted the eight references to the Resident Benefits Package as a way to generate "revenue" for property managers. *Id.* Indeed, archived versions of the webpage

12

(https://www.secondnature.com/blog/what-is-a-resident-benefits-package)    clearly    demonstrate

Second Nature's potential spoliation of evidence after the filing of the lawsuit:

a. Website on April 6, 2024 –

https://web.archive.org/web/20240406002128/https://www.secondnature.com/blog/what-is-a-resident-benefits-package .

b. Website on May 14, 2024 –

https://web.archive.org/web/20240514191608/https://www.secondnature.com/blog/what-is-a-resident-benefits-package

27.    This purging of evidence and post hoc attempt to camouflage the "resident benefits

package" is only further evidence of Defendants' knowing violation of the law.

28.    So, what is the Resident Benefits Package? Second Nature identifies a series of

items it purportedly provides to the benefit of the tenant, but in actuality, the services are designed

to protect the property manager and landlord and to increase their revenue. Each are listed below:

a.    **Filter Delivery Service** – Although a landlord is required to service a HVAC system in the District of Columbia, Second Nature attempts to pawn this obligation off on the tenant. As part of the Resident Benefits Package, a tenant receives HVAC air filters to install themselves. And the benefit here is to the landlord and property manager. According to Second Nature, "[o]ne of the most common causes of HVAC maintenance requests is a failure to change the home's air filters on time," and so the air filter delivery services results in property managers having "fewer HVAC tickets to deal with, and the investor [a/k/a landlord] has their asset protected." Second Nature states, ""[o]ur filter delivery service has proven to reduce total HVAC maintenance requests by 38% and save up to $250 per year per property."

**Defendants never even provided Plaintiffs with the HVAC air filters.**

b.    **Credit Reporting** – Second Nature refers to this service as "Credit Building" for the tenant, but in actuality, Second Nature provides "credit reporting" on behalf of the landlord or property managers because they "both reap the benefit of the extra incentive to get rent on time" as this "service directly impacts rates

13

on credit cards, auto loans, and future mortgages, incentivizing residents to get rent in on time."

c.  What they are pitching to the tenant under the guise as "Credit Building," is, in actuality, a way for the landlord to attack a tenant's credit if they are late with a rent payment. And the tenant gets billed for this so-called "benefit" that allows a landlord to attack a tenant's credit

d.  **Resident Rewards Program** – This is an undefined service which is "designed to reward and encourage good habits." When a tenant makes a payment on time, they supposedly receive "Pinata Cash." Again, "Pinata Cash" is just another instrumentality of the fraud. According to Pinata, "Property owners and operators love Piñata® because the Piñata platform boosts your bottom line, increases revenue and attracts & retains top-tier renters." And as one tenant stated, "The 'third party rewards' company in my case is an app called Pinata, which is a TOTAL SCAM."

e.  **Move-In Concierge** – According to Second Nature, the company provides a concierge service to guide the tenant in setting up utilities. The Plaintiffs were never provided with any information regarding this purported service, yet were required to provide account numbers for electric and gas utility accounts prior to receiving their keys, making such as a service moot.

   **And it turns out, the "move-in concierge" is a free service provided online to anyone (not just to Resident Benefit Package Recipients) by Citizen Home Solutions, LLC,[2] which mines user data and receives kickbacks from cable and internet service providers**.[3]

f.  **Renters Insurance** – Although the "renter's insurance" was pitched as a benefit to the tenant,[4] it was actually a policy written to protect the property manager

---

2       https://www.movewithcitizen.com/

3       https://www.movewithcitizen.com/resident/privacy-policy ("We may share the following types of Personal Information with one or more Service Providers: unique identifiers; contact information; commercial information; financial information; audio/visual information; Internet and network information; content of correspondence; inferences drawn from the foregoing categories of Personal Information.")

4       The flyer published by Second Nature and Columbia Property Management states, "We've secured the industry-leading value policy from an A-rated carrier. You'll benefit by being added to our master policy so all of your insurance requirements in the lease are met."

14

and landlord. The name of the policy, Property Manager and Landlord Protection Policy, itself demonstrates the intended beneficiary of the policy. But neither the policy, nor any information pertaining to the policy were ever disclosed to the tenants. In advertising the insurance program, Second Nature stated, "We've got you covered – Our renter's insurance program ensures 100% compliance and liability coverage protecting you, your property investors, and your residents." **"You" in the preceding sentence refers to the property manager, not the tenant.**

The Resident Benefits Package Lease Addendum (which was not attached to the lease and sent by Defendant Bloom on September 2, 2023), states that the "Landlord requires Tenant obtain liability coverage of at least $100,000 in property damage and legal liability from an A-rated carrier and to maintain such coverage throughout the entire term of the lease agreement." **This is false. No such requirement existed in the lease**. This was a false representation to try justify the fee charged for the Resident Benefit Package. Moreover, the statement is also false because the RBP did not provide $100,000 in property damage coverage.

The insurance was provided by QBE.

**The Hook: The RBP and the Associated Fees are Mandatory**

29.     Why would a tenant agree to pay a monthly fee for a Resident Benefits Package, which provides no actual benefit? Second Nature instructs its property managers to give the tenant *no option* by making the fee mandatory. Second Nature devotes an entire webpage explaining why the Resident Benefits Package fees must be mandatory.

30.     *First*, Second Nature explains that tenants should not have a choice because this is "something they want." So, Second Natures takes it upon themselves to decide for the tenants, what a tenant wants, and it unilaterally decided that tenants want to be charged additional fees. Nonsense. A basic google search will yield hundreds of complaints from tenants across the District

---

In its term sheet, Columbia Property Management referred to the insurance as the "renter's insurance" even though it was really a "Property Manager and Landlord Protection Policy."

KLAPROTH LAW PLLC
2300 WISCONSIN AVE NW SUITE 100A | WASHINGTON DC 20007
www.klaprothlaw.com

of Columbia, and the country, complaining that the Resident Benefits Package is a scam. A few are below:



r/washingtondc · 9 mo. ago
gross666

## Is a mandatory 'residents benefit fee' legit?

Trying to renew our group house lease, and the property management company (RPM) has hit us with a new clause in the lease for a mandatory 'residents benefits package'. The package would be 50 bucks a month, and is not included in our separately raised rent.

Is this a legit thing in DC that we should pay for without fighting? I have never heard of it before but want to check

Or do folks have recommendations for how to remove this from the lease and still have them fulfill their duty of maintaining the property?

To us this seems very sketchy... why are we paying 50 a month for them to continue to service our maintenance requests like they have been doing? Is this legal to be mandatory? And why are we paying it and not the homeowner who contracts them?

They are trying to upsell us on other benefits that also don't really fly:

- piñata cash rewards program (??)
- providing a furnace filter monthly (we don't have a furnace)
- a discount if we use them to buy a house
- landlord verification (??)
- putting our security deposit in obligo (??)

Ty for any advice!!

KLAPROTH LAW PLLC
2300 WISCONSIN AVE NW SUITE 100A | WASHINGTON DC 20007
www.klaprothlaw.com

**gross666** OP · 9mo ago

Oof this is absolutely Real Property Management! Thank u for replying!! Sucks so much that they started doing this, literally squeezing money out of tenants who are already living in the space :(( Insanely unethical that they don't have a fee free way to pay rent, and this seems like a new practice as it was not the case when we signed initially in 2021.

Were you able to confirm with folks in DC gov that this is legal? If so it seems like we should just sign ://

⊕   ⌃ 5 ⌄     💬 Reply     ⬆ Share     ···

**RipFamiliar9069** · 5mo ago

Oh how I wish this were the case in CA...Property Management companies are all jumping on this kind of thing. I recently moved to a new place and had to pay for this same "benefits package" in CA. They also try to force you into using their renter's insurance. What's even worse is that some of these companies are even sticking the renters with paying for a "surcharge" for city utilities (water/sewer/trash) "to help the owner." It's like rent is overinflated in every market...renters pay for all utilities and even things that SHOULD be considered normal wear and tear.

⌃ 1 ⌄     💬 Reply     ⬆ Share     ···

**GlassDependent6253** · 5mo ago

I work in the Property Management field and I agree with everyone who says the Resident Benefits Package is bs. The only parties it benefits are the PM companies and the RBP company. There was a bill last year to make them illegal but whoever was in charge ran out of time to get it on the ballot. I have my fingers crossed that it will get passed eventually.

⌃ 1 ⌄      ⬆ Share     ···

31.     *Second*, Second Nature explains that Tenants should be charged a mandatory fee because they "rarely give pushback." This is just another way of Second Nature saying, "you can steal from your tenants and get away with it."

32.     *Finally*, Second Nature claims that the primary reason for making the fee mandatory is that "optional rollouts create unnecessary headaches" for a property manager. In other words, it creates additional work for a property manager to do the accounting to track which of its tenants it is defrauding if the fees were optional.

17

**The Seeds are Planted: Columbia Property Management Requires all Tenants to Pay $45.95 for the Resident Benefits Package offered by Second Nature**

33.    Columbia Property Management and Bloom bought into Second Nature's idea of free money, or as they referred to it, "Ancillary Revenue."

34.    Accordingly, Columbia Property Management and Bloom require that all tenants at each of the properties they manage pay a mandatory monthly fee of $45.95 for a Resident Benefits Package. Each listing for each of the properties includes the following language:

> All Columbia Property Management residents are enrolled in the Resident Benefits Package (RBP) for $45.95/month which includes: renters insurance, move-in concierge service for utility and home services set-up, AC and heating air filter delivery to your door, our best-in-class resident rewards program, credit building to help boost your credit score, $1Million policy for Identity Protection and much more! The first month's rent and a security deposit equal to one month's rent are due before moving in. More details upon application.

And as we now know, the so-called "renters insurance" referred to in the listing is a misrepresentation as the actual insurance is actually a "Property Manager and Landlord Protection Policy."

35.    Upon information and belief, for each of the listings, Columbia Property Management and Bloom also provide a "Terms Sheet" which states:

> **Resident Benefits Package**
> All Columbia Property Management residents are enrolled in the Resident Benefits Package (RBP) for $45.95/month which includes: renter's insurance, move-in concierge service for utility and home services set-up, AC and heating air filter delivery to your door, our best-in-class resident rewards program, credit building to help boost your credit score, $1Million policy for Identity Protection and much more! More details upon application.

Again, this too misrepresents the insurance as being "renter's insurance".

**The Fraudulent Scheme is Uncovered**

36.    In the case of the Plaintiffs, they applied to rent the Property at the end of May

18

2023.

37.    On May 30, 2023, Columbia Property Management provided Plaintiffs with a "sample lease" that made no mention of the Resident Benefits Package, or any fees associated with it.

38.    On May 31, 2023, Columbia Property Management "conditionally approved" the application, subject to a criminal background check and Plaintiffs submitting the first month's rent and fees within three business days. Without any explanation, Columbia Property Management attached to the "conditional approval" email, a document titled, "RBP CPM Flyer_010623." A screenshot of the flyer is below:

19



**Columbia Property Management**
rbp by second nature
**Resident Benefits Package**

"I'm getting way more out of renting than I ever did before"
-Helen S.

Featured In:  Forbes House yahoo/ Inc.
 Trustpilot Google Over 15,000 5-star reviews

# Benefits so good, you may never want to leave.

At Columbia Property Management, all of our residents get the #1, most-awarded experience:

 **Filter Delivery Service**
Changing filters is as easy as opening the front door. This service helps you save up to $250/year and reduces the hassles of repairs.

 **$1M Identity Protection**
1 in 4 Americans are victims of identity fraud. All adult leaseholders get $1M coverage backed by AIG, monitoring through IBM's Watson, and a dedicated, US-based Identity Restoration Specialist.

 **Resident Rewards Program**
Rent day is now rewards day. You'll get cash, giftcards, and exclusive discounts you can use to save up to $4500/year on everyday expenses.

 **24/7 Maintenance Coordination**
It always seems like things happen after hours. This makes reporting those pesky maintenance issues easy and fast either online or by phone.

 **Online Portal**
Access your documents and pay rent through our easy to use online portal.

 **Credit Building**
We report every rent payment so you build credit. Average increases of 23 to 42 points in resident scores, so you can qualify for more and save hundreds. We can report up to the past 24 months for an immediate boost.

 **Renters Insurance**
We've secured the industry-leading value policy from an A-rated carrier. You'll benefit by being added to our master policy so all of your insurance requirements in the lease are met. If you want a retail individual policy, you can still get that at any time.

 **Move-In Concierge**
One call sets up utility, cable, and internet services – and helps you get the best promos and discount codes available.

 **Vetted Vendor Network**
Everyone who services your home is screened to exceed our standards for insurance, licensing, and professionalism for the job.

 **More**

39.     The flyer contained no information about the mandatory fee for the "Resident Benefit Package" but instead misrepresented it as "Benefits so good, you may never want to leave." The flyer also contained numerous misrepresentations about "Renter's Insurance," as well as various other aspects of the "Resident Benefits Package." Further, the flyer contained the false

20

"I'm getting way more out of
renting than I ever did before"

-Helen S.

testimonial:                                                    And we know this is false,

because although this is a Columbia Property Management flyer, an identical flyer published by

Real Property Management: DC Metro contains the same testimonial.

40.    On May 31, 2023, Columbia Property Management notified Plaintiffs they received

"final approval for the application" for the property.

41.    On June 1, 2023, Columbia Property Management sent the lease to the Plaintiffs

through an electronic signature program called BlueInk. In the body of the email, Columbia

Property Management wrote, "I have drafted this lease along with the Resident Benefit Packet

Addendum for your review and signature." The "Resident Benefit Packet Addendum" was not,

however, attached to the Lease or provided to the Plaintiffs at this time.

42.    By June 5, 2023, all the Plaintiffs executed the Lease. Scott Bloom executed the

lease on behalf of the Landlord on June 2, 2023. The Lease contained no information concerning

a mandatory monthly fee of $49.95 or any information relating to a Resident Benefits Package.

Columbia Property Management wrote into the lease in the "Additional Provisions" Section at the

end of the Lease, that "Tenant Acknowledges that attached documents form part of this Lease:

Appendix A, Appendix B, and the CPM Resident Handbook." But these documents were not

attached to the lease, nor were they provided to Plaintiffs at this time. Plaintiffs have no records

containing signed copies of the document and were not able to locate any such document on

BlueInk.

43.    On June 13, 2023, Columbia Property Management provided Plaintiffs with a fully

KLAPROTH LAW PLLC
2300 WISCONSIN AVE NW SUITE 100A | WASHINGTON DC 20007
www.klaprothlaw.com

executed copy of the Lease, which did not contain Appendix A, Appendix B, or the CPM Resident Handbook. In addition, the fully executed lease provided to the Plaintiffs did not include any information concerning the "Resident Benefits Package."

44.     Despite not agreeing to the Resident Benefits Package, nor being provided with any information regarding the terms of it, Defendants charged Plaintiffs $45.95 for the Resident Benefits Package on June 26, 2023, July 30, 2023, and August 27, 2023. In addition to the mandatory fee of $45.95, Defendants also charged a "service fee" of $2.95.

45.     Immediately after moving into the Property, the Plaintiffs experienced water leaks in the Property and electrical shorting. According to Columbia Property Management, the water leaks were causing the electrical shorting. On August 24, 2023, Ms. Stephan complained to Columbia Property Management, "Should we be worried that the electric is shorting and they [GFCI outlets and breakers] aren't going off?"

46.     On August 28, 2023, the Property caught on fire due to the electrical issues that had been unaddressed by the Landlord or Columbia Property Management, resulting in Plaintiffs' property being destroyed and them being without a place to live.

47.     On August 29, 2023, Plaintiffs attempted to open an insurance claim with Columbia Property Management for the "Renter's Insurance," included as part of the Resident Benefits Package. Columbia Property Management redirected Plaintiffs to Second Nature. This is the first they learned of Second Nature's involvement with respect to the so-called "Renter's Insurance." Second Nature told Plaintiffs that a claim had been "submitted to the carrier" and was redirected with any questions to "QBE Claims: 844-723-2524." This was the first time that Plaintiffs had knowledge of QBE's involvement with the so-called "Renter's Insurance" provided as part of the

22

Resident Benefits Package. At this time, Plaintiffs still have never been provided with a copy of any insurance policy for the "Renter's Insurance."

48.     Without any answers concerning the insurance coverage under the "Renter's Insurance," Plaintiffs turned to Scott Bloom and Columbia Property Management for some answers. Backpedaling, on September 2, 2023, Bloom provided a chronology of their purported disclosures concerning the Resident Benefits Package, which include the language in the rental listing and term sheet referenced above. Bloom further attached "Appendix B," which he stated "is one of the documents that goes out and is signed" at the time of the lease and it "gives additional information on how the RBP program works and more details about each benefit in the program." Notably, "Appendix B" provided by Bloom was unsigned by Plaintiffs.[5] Importantly, Bloom stated in the email, "I wanted to also send you the documents we located related to the information you asked about, specifically *about the manner in which we offered the insurance*." (emphasis added). Neither Scott Bloom nor Columbia Property Management were licensed to offer or sell insurance in the District of Columbia.

49.     Appendix B provided by Bloom on September 2, 2023, stated that the "Tenant" could purchase an insurance policy other than the insurance provided as part of the Resident Benefit's Package, and the "Resident Benefits Package" monthly amount will be adjusted accordingly. Two conclusions can be drawn from this: (1) the mandatory fee would be charged no matter what, even if the Plaintiffs, or Class Members, purchased their own insurance policy; and (2) QBE received a portion of the mandatory fee charged by Defendants for the "Resident Benefits

---

5       Plaintiffs have no records containing signed copies of the document and were not able to locate any such document on BlueInk.

23

Package" for the insurance premium which explains why the mandatory fee would "be adjusted accordingly" if the tenant purchased his/her own insurance policy.

50.     In addition, the first time Plaintiffs received a copy of what they believed to be their "Renter's Insurance" was October 11, 2023. At this time, they learned that it was actually a "Property Manager and Landlord Protection Policy," which primarily provided coverage for the Landlord and Columbia Property Management. The insured listed on the policy was not one of the Plaintiffs, but instead Second Nature. They also learned that the "Property Manager and Landlord Protection Policy" was issued by QBE and the policy was "written in the name of Property Managers, Owners, Distribution Partners, Agencies, rather than the resident like an H04 policy." This Property Manager and Landlord Policy, which they had been paying for, only provided $10,000 of coverage for all four Plaintiffs' personal property, or rather, $2,500 per individual. Their losses vastly exceeded the limits of coverage. While on the other hand, the policy provided property damage coverage to the Landlord and property manager in the amount of $100,000, as well as loss of rental income coverage. In other words, Columbia Property Management and Bloom, had been billing the Plaintiffs for insurance coverage for Columbia Property Management and the Landlord. Had Plaintiffs known about the limited insurance coverage provided under the Property Manager and Landlord Protection Policy or been provided with a copy of the Policy, they would have purchased an actual renter's insurance policy that provided adequate coverage for their personal property.

## CLASS ACTION ALLEGATIONS

51.     Plaintiffs seek to bring this case as a class action on behalf of themselves and all other tenants in the District of Columbia charged a mandatory fee by any of the Defendants.

KLAPROTH LAW PLLC
2300 WISCONSIN AVE NW SUITE 100A | WASHINGTON DC 20007
www.klaprothlaw.com

52.     The class shall be defined as residential tenants in the District of Columbia residing in rental units that are not exempt from rent control and who were charged fees by Defendants for a Resident Benefits Package, for insurance, or any other service. The class shall include the following subclasses:

    a.  All tenants in the District of Columbia charged a fee by Columbia Property Management and/or Scott Bloom for a "Resident Benefits Package"; and,

    b.  All tenants in the District of Columbia charged a fee for a "Resident Benefits Package" provided by Second Nature.

53.     The proposed class is so numerous that joinder of all members is impractical. According to Columbia Property Management, it manages hundreds of properties for "100 or so clients", and all the tenants at those properties are charged a mandatory fee for the Resident Benefits Package. Indeed, every one of its listings states that the monthly fee for the Resident Benefits Package is mandatory.

54.     In addition, Second Nature provides Resident Benefits Packages to District of Columbia tenants through property managers other than Columbia Property Management, including without limitation: EFJ Rentals, Real Property Management: DC Metro, and Bay Property Management Group.

55.     There are common questions of law and fact common to the class because all of the properties managed by Columbia Property Management charge a mandatory fee for the "Resident Benefits Package," in violation of D.C. Code § 42–3502.11a. The "Resident Benefits Package" is provided by Second Nature and the corresponding insurance is provided by the QBE.

56.     In addition, Defendants violated the CPPA by violating D.C. Code § 42–3502.11a and D.C. Code § 31-1131.03, as well by violating D.C. Code § 28-3904 by mispresenting the

25

Resident Benefits Package, as well as the insurance provided as part of the Resident Benefits Package.

57.     Defendants' scheme to bilk D.C. tenants out of their money through unlawful mandatory fees, as well as misrepresentations regarding the Resident Benefits Package, was common to all D.C. tenants that were charged fees for a Resident Benefits Package. Accordingly, the unlawful fees charged to Plaintiffs, and consumer fraud perpetuated against Plaintiffs, is typical and representative, of the unlawful fees charged to, and misrepresentations made to, members of the class.

58.     Plaintiffs can, and will, adequately represent the interests of the class because Plaintiffs are similarly situated with and have suffered similar injuries as the members of the class they seek to represent. Plaintiffs have no interests that conflict with or that are antagonistic to the interests of the entire class. Plaintiffs have retained Brendan Klaproth of Klaproth Law PLLC who is competent to represent the Class and will vigorously prosecute this litigation.

59.     A class action is superior to any other available method for the fair and efficient adjudication of the controversy because:

    a.   Common questions of law and fact predominate over any individual questions that may arise, because all claims involve Defendants charging unlawful mandatory fees to tenants in the District of Columbia, and the same unlawful trade practices in violation of the D.C. Consumer Protection Procedures Act.

    b.   No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

    c.   Upon information and belief, there are no pending lawsuits concerning this controversy.

    d.   It is desirable to concentrate the litigation of these claims in this forum since the acts complained of took place in the District of Columbia, involves claims brought on behalf of D.C. tenants, and this forum is convenient to the parties,

KLAPROTH LAW PLLC
2300 WISCONSIN AVE NW SUITE 100A | WASHINGTON DC 20007
www.klaprothlaw.com

the class members, and potential witnesses. The resolution of the claims of all class members in a single forum, and in a single proceeding, would be a fair and efficient means of resolving the issues raised in this litigation.

e.  The prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, and adjudications with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of the other members not party to the adjudications or substantially impair or impede their ability to protect their interests.

f.  This class is specifically identifiable to facilitate provision of adequate notice and there will be no significant problems managing this case as a class action. Indeed, Defendants records will show which tenants were charged the mandatory fees associated with the Resident Benefits Package.

g.  Resolution of class members' claims in this single class action is superior to resolution of this controversy through the filing of a host of individual actions as a matter of efficiency, consistency and in that it removes economic and other barriers to class members pursuing their claims. Absent this class action, class members will not likely obtain redress of their injuries and Defendants would retain the proceeds of their violations of the laws of the District of Columbia.

## COUNT I
## VIOLATION OF D.C. CODE § 42-3502.11a

60.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs of this First Amended Complaint as if fully set forth herein.

61.    Under D.C. Code § 42-3502.11a, "[a] housing provider shall not impose on a tenant a mandatory fee for a service or facility that has not been approved pursuant to § 42-3502.11 or § 42-3502.15." Furthermore, "a housing provider who violates this section shall be liable to the tenant for treble damages pursuant to section 901(a)."

62.    Defendants violated D.C. Code § 42-3502.11a by charging a mandatory fee for the Resident Benefits Package, which had not "been approved under § 42-3502.11 or § 42-3502.15."

63.    QBE and Second Nature are directly liable under D.C. Code § 42-3502.11a. QBE

27

and Second Nature are also vicariously liable under D.C. Code § 42-3502.11a as they are agents of Columbia Property Management. for aiding and abetting Columbia Property Management, as well as conspiring with Columbia Property Management, to charge a mandatory fee in violation of D.C. Code § 42-3502.11a. The overt acts by QBE include, without limitation, issuing a "Property Manager and Landlord Protection Policy" to Second Nature as part of the Resident Benefits Package, which was falsely marketed as a "Renter's Insurance" policy. The insurance policy issued by QBE was an instrumentality of the fraud perpetuated by Defendants to defraud tenants out of money through mandatory fees. The overt acts by Second Nature include all of the marketing materials published on its website, including without limitation, those referenced in Paragraphs 24-32 above. These marketing materials were published to induce property managers, such as Columbia Property Management, to violate D.C. Code § 42-3502.11a. The overt acts by Second Nature further include, without limitation, providing and administering the Resident Benefits Package, which served as the basis to charge the mandatory monthly fee.

64.    In addition, QBE and Second Nature are further liable under D.C. Code § 42-3502.11a as they operated as part of a joint venture with Columbia Property Management. Defendants operated as part of a joint venture with one another for the common purpose of defrauding District of Columbia residents out of money through Second Nature's "Resident Benefits Package," which was marketed as providing "Renter's Insurance" through QBE. Each of the Defendants had an equal right to control the manner in which the joint venture operated, including without limitation, providing so-called "Renter's Insurance" as one of the purported benefits to tenants, billing a monthly mandatory fee to the tenants, and determining which properties were eligible to be included under the Master Policy. Second Nature described the joint

KLAPROTH LAW PLLC
2300 WISCONSIN AVE NW SUITE 100A | WASHINGTON DC 20007
www.klaprothlaw.com

venture on its webpage, https://www.secondnature.com/benefits/renters-insurance. And on that
webpage, it referred to QBE as its "preferred insurance partner-broker…".

65.     WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated,
pray for relief in the form of a judgment against Defendants: (1) awarding compensatory damages;
(2) awarding treble damages; (3) awarding costs and attorney's fees; (4) awarding punitive
damages; (4) declaring mandatory fees charged for the Resident Benefits Package to be unlawful;
(5) permanently enjoining Defendants from charging fees for the Resident Benefits Package, or
any other service not approved under D.C. Code § 42-3502.11 or § 42-3502.15; (6) disgorging all
amounts received by Defendants in connection with the Resident Benefits Package; and (7) any
other relief the Court deems proper.

**COUNT II**
**UNLAWFUL TRADE PRACTICES UNDER THE**
**D.C. CONSUME PROTECTION PROCEDURES ACT**

66.     Plaintiffs reallege and incorporate by reference the allegations contained in the
preceding paragraphs of this First Complaint as if fully set forth herein.

67.     Under the CPPA it is an unlawful trade practice to violate other statutes and
regulations. Defendants violated the CPPA by violating: (1) D.C. Code § 42-3502.11a; and (2)
D.C. Code § 31-1131.03. As stated above, (1) D.C. Code § 42-3502.11a prohibits a housing
provider from charging mandatory fees, such as the Resident Benefits Package fee charged to
Plaintiffs. In addition, D.C. Code § 31-1131.03 prohibits a person from selling insurance without
a license to do so. Neither Defendants Second Nature Brands Inc., Columbia Property
Management, nor Scott Bloom were licensed to sell insurance on behalf of QBE.

68.     Defendants committed an unlawful trade practice in violation of D.C. Code § 28-

KLAPROTH LAW PLLC
2300 WISCONSIN AVE NW SUITE 100A | WASHINGTON DC 20007
www.klaprothlaw.com

3904(e) and/or 3904(f) when they made the following misrepresentations and/or omissions of material fact that have a tendency to mislead:

    a.  Misrepresenting that the "Resident Benefits Package" included "Renter's Insurance" when it was actually a "Property Manager and Landlord Protection Policy." This misrepresentation was contained in the Terms Sheet and Flyer disseminated by Defendants, the emails sent by Columbia Property Management, oral representations, and was never disclosed by QBE;

    b.  Misrepresenting, "We've got you covered – Our renter's insurance program ensures 100% compliance and liability coverage protecting you, your property investors, and your residents";

    c.  Misrepresenting that the "Resident Benefits Package" benefitted tenants when it did not and was instead designed to obtain "ancillary revenue" from tenants through bogus mandatory fees;

    d.  Misrepresenting that the "Resident Benefits Package" provided value to tenants when it did not;

    e.  Misrepresenting that Defendants could impose a mandatory fee, when they could not;

    f.  Misrepresenting that the "move-in concierge service" had value when it did not; and instead, was a publicly available free service provided Citizen Home Solutions, LLC, which mines user data and receives kickbacks from cable and internet service providers;

    g.  Misrepresenting that the HVAC filter service benefitted tenants when it actually benefited landlords and property managers as HVAC maintenance is a landlord obligation under the D.C. law;

    h.  Misrepresenting that the "Resident Rewards Program" administered by Pinata had value to tenants when it did not;

    i.  Misrepresenting that the credit reporting was "credit building" for the tenant, but in actuality credit reporting as a threat to "incentiviz[e] residents to get rent in on time;

    j.  Misrepresenting fictious testimonials as real testimonials in their marketing materials;

    k.  Misrepresenting that the "online portal" was a benefit to the tenant when it was actually a way to pawn a property manager's overhead expenses;

30

l.   Misrepresenting that the tenants were required under the lease to provide insurance for the landlord, when they were not;

m.   Misrepresenting that tenants would receive HVAC filters as part of the "Resident Benefits Package", when they did not;

n.   Misrepresenting that each individual tenant received "Renter's Insurance" when in fact QBE only provided $10,000 for the "insured location" regardless of how many tenants resided there;

o.   Failing to disclose the terms of the "Renter's Insurance" to tenants;

p.   Failing to provide a copy of the "Property Manager and Landlord Protection Policy" to the tenants;

q.   Failing to disclose that the "Renter Insurance" was actually a "Property Manager and Landlord Protection Policy";

r.   Failing to disclose that Second Nature Second Nature Brands Inc was not licensed to sell insurance; and,

s.   Failing to disclose that Columbia Property Management was not licensed to sell insurance.

69.    QBE was responsible for each of the misrepresentations contained in paragraph 68 by failing to disclose the material fact that the insurance it provided was in fact a "Property Manager and Landlord Protection Policy" rather than a renter's insurance policy; that the insurance did not provide insurance to each of the tenants, but instead to an "insured location"; the cost of the insurance; whether the insurance was in fact mandatory; their affiliation with Second Nature and/or Columbia Property Management; the terms of the insurance policy; falsely advertising the insurance provided by QBE; misrepresenting the benefits, advantages, conditions or terms of a policy; using a title of a policy to misrepresent the true nature of the policy; failing to disclose the cost of the premiums of the policy; and having unlicensed individuals and/or companies to sell QBE's insurance on behalf of QBE. Indeed, had a QBE insurance agent

31

advertised the Property Manager and Landlord Policy as a renter's policy to tenants, it would be fraud. It is no different for QBE to instead have its agents, Second Nature and Columbia Property Management, misrepresent the "Property Manager and Landlord Protection Policy" as a renter's insurance policy, when it is not.

70.     In addition, QBE committed an unlawful trade practice in violation of D.C. Code § 28-3904(e) and/or 3904(f) (in addition to those set forth in Paragraphs 68 and 69) by:

   a.  QBE actively participated in the Defendants' deceptive scheme by knowingly issuing and underwriting the "Property Manager and Landlord Protection Policy" that was falsely marketed to tenants as "Renter's Insurance." QBE was aware that this misrepresentation would likely mislead consumers and induce them to enroll in the Resident Benefits Package.

   b.  QBE failed to disclose material information to Plaintiffs and the Class members regarding the true nature and limitations of the insurance coverage. QBE knew or should have known that the Policy primarily benefited the landlords and property managers, not the tenants, and that this omission would significantly impact consumers' decision-making.

   c.  QBE directly profited from the Defendants' deceptive practices by collecting insurance premiums as part of the mandatory Resident Benefits Package fee. QBE's financial gain was inextricably linked to the misrepresentations and omissions that induced Plaintiffs and the Class members to enroll in the program.

   d.  QBE enabled Defendants Second Nature Brands Inc. and Columbia Property Management to engage in unlicensed insurance sales by allowing them to market and administer the "Property Manager and Landlord Protection Policy" as part of the Resident Benefits Package. QBE's complicity in this unlawful conduct further establishes its liability under the CPPA.

71.     But for the misrepresentations and omissions set forth in Paragraphs 68-70, Plaintiffs would not have rented the Property. Had Plaintiffs been informed as to the terms of the insurance provided by QBE, the Resident Benefits Package, and the illegal fees charged for the Resident Benefits Package, they would not have rented the Property.

KLAPROTH LAW PLLC
2300 WISCONSIN AVE NW SUITE 100A | WASHINGTON DC 20007
www.klaprothlaw.com

72.     Under the CPPA, it is an unlawful trade practice to represent that goods or services have approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have. See D.C. Code § 28-3904(a). Defendants committed an unlawful trade practice in violation of D.C. Code § 28-3904(a) as set forth in paragraphs 68(a)-(r), 69, and 70. But for these misrepresentations, Plaintiff would not have rented the Property.

73.     Under the CPPA, it is an unlawful trade practice to represent that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law. See D.C. Code § 28-3904(e-1). Defendants violated D.C. Code § 28-3904(e-1) by charging mandatory fees that were prohibited by law, misrepresenting that Plaintiffs were receiving "Renter's Insurance" when they were not, and misrepresenting the other illusory benefits contained in the Resident Benefits Package. Had Plaintiffs been fully informed that they would be charged mandatory fees for a Resident Benefits Package offering these illusory benefits, they would not have rented the Property.

74.     Defendants violated D.C. Code § 28-3904(k) by falsely representing that insurance was required under the Lease for the Landlord when it was not and by falsely representing that the Resident Benefits Package was mandatory when it was not. But for these misrepresentations, Plaintiffs would not have rented the Property and/or would have obtained their insurance coverage.

75.     Defendants violated D.C. Code § 28-3904(q) by failing to provide Plaintiffs with a copy of the Policy. Had Plaintiffs received a copy of the insurance policy, they would not have rented the Property and/or would have obtained a separate insurance policy to ensure they were adequately insured.

76.     Defendants violated D.C. Code § 28-3904(v) by misrepresenting that Defendants

33

Second Nature, Columbia Property Management, and Bloom had the authority to sell insurance when they did not.

77.    Ultimately, Plaintiffs were sold a package of services billed as the Resident Benefits Package. They rented the Property believing, based on Defendants' misrepresentation, that they would receive these so-called benefits and save money by not having to get a renter's insurance policy, because this was included as part of the Resident Benefits Package. At bottom, Plaintiffs were sold services they did not receive nor were required to pay for. They were injured.

78.    Furthermore, Defendants unlawful conduct and misrepresentations deprived Plaintiffs and the Class members of their right to make informed choices about their housing and insurance needs. The misrepresentations and omissions regarding the Resident Benefits Package and its mandatory nature interfered with their ability to negotiate lease terms, compare options in the marketplace, and obtain necessary renter's insurance, causing a concrete injury.

79.    In addition, Plaintiffs and the Class Members suffered a concrete economic injury by overpaying for the Resident Benefits Package, as well as insurance, due to the Defendants' misrepresentations. The insurance policy, falsely advertised as "Renter's Insurance," provided inadequate coverage for their personal property which they overpaid for, leaving them exposed to significant financial losses in the event of damage or loss, as tragically exemplified by the fire at the Property.

80.    WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief in the form of a judgment against Defendants jointly and severally: (1) awarding $1,500 per violation of the CPPA, (2) awarding compensatory damages; (3) awarding treble damages; (4) awarding costs and attorney's fees; (5) awarding punitive damages; (6) declaring

KLAPROTH LAW PLLC
2300 WISCONSIN AVE NW SUITE 100A | WASHINGTON DC 20007
www.klaprothlaw.com

mandatory fees charged for the Resident Benefits Package to be unlawful; (6) permanently enjoining Defendants from charging fees for the Resident Benefits Package, or any other service not approved under D.C. Code § 42-3502.11 or § 42-3502.15; (7) disgorging all amounts received by Defendants in connection with the Resident Benefits Package; and (8) any other relief the Court deems proper.

## PRAYER FOR RELIEF

81.     WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief in the form of a judgment against Defendants, jointly and severally: (1) awarding $1,500 per violation of the CPPA, (2) awarding compensatory damages; (3) awarding treble damages; (4) awarding costs and attorney's fees; (5) awarding punitive damages; (6) declaring mandatory fees charged for the Resident Benefits Package to be unlawful; (6) permanently enjoining Defendants from charging fees for the Resident Benefits Package, or any other service not approved under D.C. Code § 42-3502.11 or § 42-3502.15; (7) disgorging all amounts received by Defendants in connection with the Resident Benefits Package; and (8) any other relief the Court deems proper.

## JURY AND TRIAL DEMAND

Plaintiffs hereby demand a trial by jury with respect to each claim in this First Amended Complaint.

Respectfully submitted,

*/s/ Brendan J. Klaproth*
Brendan J. Klaproth (D.C. Bar No. 999360)
Jesse C. Klaproth (D.C. Bar No. 90009387)
Klaproth Law PLLC
2300 Wisconsin Ave NW

35

Suite 100A
Washington, DC 20007
Tel: 202-618-2344
Email: bklaproth@klaprothlaw.com
Email: jklaproth@klaprothlaw.com
*Attorneys for Plaintiffs*

KLAPROTH LAW PLLC
2300 WISCONSIN AVE NW SUITE 100A | WASHINGTON DC 20007
www.klaprothlaw.com